1
2
3
4
5

**ANAPOL WEISS**
Tracy A. Finken, Esquire
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
(215) 735-1130
tfinken@anapolweiss.com
***Attorney for Plaintiff***

6

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

7

8  BRIAN SCHNOLL,

9          Plaintiff,

10    v.

11  FUTURE MOTION, INC., and
   DOES 1-100,

12

13          Defendants.

**MASTER DOCKET CASE NO.:**
**23-md-03087-BLF**

**JUDGE BETH LABSON FREEMAN**

**CASE NO.:**

**COMPLAINT FOR DAMAGES FOR PERSONAL INJURY**

1. Negligence
2. Strict Liability
3. Failure to Warn
4. Negligent Design
5. Negligent Recall/Retrofit
6. Violations of California Business & Professions Code § 17200
7. Violation of the Consumer Legal Remedies Act – California Civil Code § 1750, et seq.
8. Punitive Damages

**DEMAND FOR JURY TRIAL**

14
15
16
17
18
19
20

21

## COMPLAINT

22      Plaintiff, BRIAN SCHNOLL, by and through his undersigned counsel, allege(s) as

23  follows:

24

25

## NATURE OF ACTION

26      This is a products liability case arising out of the severe personal injuries of Plaintiff,

27  BRIAN SCHNOLL, as a result of serious defects and negligence caused by Defendant Future

28  Motion, Inc's ("FM" or "Defendant FM") product, "Onewheel," a one-wheeled self-balancing

1

electric transporter manufactured and marketed by FM, which ultimately caused Plaintiff's injuries.

**PARTIES**

1.      The Plaintiff in this matter is BRIAN SCHNOLL (hereinafter "Mr. Schnoll" or "Plaintiff"). He is a resident of Cherry Hill, New Jersey.

2.      Future Motion Inc. (hereinafter "FM" or "Defendant FM") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of California. It may be served with process through its agent for service of process, Paracorp Incorporated, 2804 Gateway Oaks Dr. #100, Sacramento, CA 95833.

3.      The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of DOES 1 through 10, inclusive, are unknown to Plaintiff at this time. Plaintiff therefore sues said Defendants by such fictitious names. When the true names and capacities of the DOE Defendants have been ascertained, Plaintiff will amend this complaint accordingly. Plaintiff is informed and believes that each DOE Defendant designated herein is responsible, negligently or in some other actionable manner, for the events and happenings that caused injuries and damages to the Plaintiff.

4.      Defendant FM's founder and current CEO, Kyle Doerksen, founded Defendant FM and designed FM's Onewheel Product in California's Silicon Valley.

5.      On information and belief, Plaintiff alleges that the majority of Defendant FM's Executive Team, including the CEO, Kyle Doerksen, as well as its Chief Technology Officer and its Chief Marketing Officer, all live in, or reside near, Santa Cruz County.

6.      At all times hereinafter mentioned, Defendant FM was, and still is, a digital vehicle company involved in research, development, testing, manufacture, production, promotion, distribution, and marketing of Onewheel for distribution, sale, and use by the general public, throughout the United States and the State of California.

7.      FM is duly authorized to, and does, conduct business within the State of California and in the County of Santa Cruz.

8.    FM derives substantial revenues from products it sells in the State of California and in the County of Santa Cruz.

9.    FM designed, manufactured, marketed, distributed, and sold Onewheel in California, including Santa Cruz. FM designed, manufactured, marketed, distributed and sold Onewheel to third-parties in California, and, to Plaintiff.

**VENUE AND JURISDICTION**

10.    Mr. Schnoll is an individual, and at all relevant times, a resident of New Jersey.

11.    Defendant FM has purposefully availed itself of the benefits and the protections of the laws within the State of California. Defendant FM has its principal place of business within the State of California. Defendant FM has had sufficient contact such that the exercise of jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

12.    This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a resident of New Jersey, and Defendant's principal place of business is in California, and the amount in controversy exceeds $75,000.

13.    Venue is proper because Defendant FM maintains their principal place of business in the Northern District of California. 28 U.S.C. § 1391 (b)(1).

**GENERAL ALLEGATIONS**

14.    FM's product "Onewheel" is a self-balancing, battery-powered, one-wheel electric transport that is often described as an electric skateboard. The product was and is advertised, analyzed, assembled, compounded, designed, developed, distributed, formulated, inspected, labeled, manufactured, marketed, packed, produced, promoted, processed, researched, sold, and tested by FM. Upon information and belief, FM developed, designed and manufactured not only the Onewheel product line, but all the subsystems that power it, including motors, power electronics, battery unit, battery management system, controller unit or circuit board, and smartphone applications ("apps").

15.    Upon information and belief, operation of FM's Onewheel is, or may be, controlled and/or monitored, in part, by an "app" installed on users' smartphones. The Onewheel app allows users to view their total miles, battery life, speed, and other information. The speed indicator of the Onewheel app is similar to a speedometer in a car. It lists the maximum speed as 26.1 miles per hour, even though the published maximum speed for the Onewheel is far less— approximately 19 miles per hour.

16.    FM promotes itself as being "IN THE BUSINESS OF MAKING THE FUTURE 'RAD'." (Https://onewheel.com/pages/about-us.) According to FM's website, the Onewheel is designed to make the rider forget that "there are thousands of calculations happening per second to keep you perfect." FM claims that the Onewheel can "really reignite the childhood" inside of riders. Videos on Onewheel's website depict users riding the Onewheel device in a variety of settings — in concrete drainage basins, through standing water, on the open highway (with cars approaching), on dirt paths, on the beach, through wooded areas, across fallen logs, and on and off the sidewalk. Onewheel-sponsored videos show users riding a Onewheel with and without helmets.

17.    Upon information and belief, one of Onewheel's key features (and its most dangerous and unpredictable feature) is that it will allegedly provide the rider with "pushback" when approaching the device's limits during use. Often however, instead of, or in addition to, such "pushback" (which is allegedly designed as a warning to riders to avoid a dangerous situation), the Onewheel will simply shut off and cause the board to unbalance and "nosedive" forward, often resulting in the rider being thrown off the device. The harder the device works to maintain operations, the less the Onewheel is able to assist the rider in balancing. Once the motor's resources reach a critical point, the motor's normal ability to help the rider balance disappears, and the rider experiences an unexpected violent nosedive. Often, this will feel to the rider like the motor suddenly cut out or shut down. Different factors create a variability as to when and what will cause the Onewheel to shutdown and nosedive, including the rider's weight, tire pressure, wind direction, rider's stance, battery level, grade of incline or decline, and other factors known and unknown. Thus, predicting exactly when or what will cause a nosedive is impossible.

18.     Upon information and belief, the leading cause of "pushback" nosediving is velocity. When experiencing velocity pushback, the rider will purportedly feel the nose of the board rise to various degrees when a certain velocity is reached. Often, velocity pushback occurs at a speed lower than that of the maximum due to the above-mentioned factors.

19.     Upon information and belief, nosedives also occur when ascending or descending hills, purportedly to alert the rider, again, that the motor and/or the battery unit may be becoming overworked. The problem when this nosedive occurs, however, is that it is difficult to discern when the rider is feeling pushback, or whether it is the natural resistance caused by the incline/decline. While ascending hills, riders are already pressing against the nose and the grade of the hill to ascend, and therefore may not be able to discern pushback as pushback. While descending, a rider may not feel pushback because his/her weight is likely already on the tail to control speed. The absence of pushback in such situations will likely result in a sudden nosedive or tailspin, especially if the rider is unaware that the board is giving them pushback. Again, the result will be that the rider feels the board suddenly shut down during operation resulting in violently throwing the rider forward and down off the board.

20.     Upon information and belief, another instance when a board nosedive occurs when the Onewheel is nearing battery depletion. When the Onewheel purportedly senses the battery unit is about to be damaged by over-depletion, the board will shut off entirely, leaving the rider left to suddenly and unexpectedly recalibrate his/her balance, often resulting in the rider being thrown off the board.

21.     Upon information and belief, yet another form of pushback is referred to as regeneration pushback. One way that the Onewheel recharges its battery is to collect kinetic energy when traveling down a decline to reserve such power in the battery. However, this may result in the battery becoming overcharged, which may damage the battery. Upon information and belief, FM "addressed" this problem by designing the board to suddenly and unexpectedly shut down in order to prevent battery damage, at the expense of rider safety. Instead of having the battery reach overcharge, prior to regeneration-related damage to the battery, the Onewheel will shut down and

violently throw the rider forward and down off the board. The same problems in discerning pushback while ascending/descending also occur in this situation.

22.    Upon information and belief, another common cause of nosedives is due to acceleration. If a rider attempts to accelerate quickly, the motor may not support the sudden weight and force on it and the nose will suddenly drop. Yet, one of the features of the Onewheel is its ability to accelerate quickly, even from a complete stop. Such acceleration nosedives can happen at any speed, even from a dead stop, and the rider will feel as though the motor has suddenly cut out or shut off. Tail-slides occur when the rider shifts his/her weight onto the back of the board and thereby overwhelms the motor. In that case, the tail of the board will suddenly drop and slide on the ground, causing the rider to become instantly unbalanced.

23.    Upon information and belief, not only is it prohibitively difficult to determine when nosedives/tailspins/shut-offs will occur, but the result of such unexpected, unpredictable and undiscernible events almost invariably cause the rider to be ejected or fall from the board, resulting in severe injuries or death. A Onewheel nosedive or shut-off is not a small event as it might be with any other type of vehicle. The front of the board violently slams into the ground and then the rider is inevitably thrown downward and forward, often leading with their heads.

24.    The seriousness and unpredictability of the latent defects described above render the Onewheel a prohibitively dangerous device. Experienced Onewheel riders have said that such failures can "strike at anytime" and that it is a "big fear" when riding the device. Many riders do not know how to recognize and react to "pushback," which is the only "warning" in place to notify riders of an impending nosedive. Riders say they fall because they do not know what pushback is or what it feels like. Many other riders insist they never felt any pushback at all before the motor just "cuts off" and stops, no matter the speed at which the rider is traveling. There exist no warning lights, vibrations, or sounds to alert a rider that a nosedive is imminent, and although the device connects to the rider's smartphone with an arguably sophisticated "app," the app provides no ability for the rider to be warned of a dangerous operating condition—no buzzes, vibrations, alarms, or other alerts are offered. Onewheel riders say that "[a] lot of people just jump to conclusions that it's all the rider's fault," but the fact is that nosedives have been a flaw since day

6

one. Other riders wonder "[w]hy can't there be an audible alarm accompanied by the 'pushback?' and that the "flaw should have been addressed a LONG TIME ago!" Another unofficial Onewheel spokesperson describes the vehicle as "one wheel against anything that can go wrong." "If people want ripped tendons, let's give them ripped tendons."

### PLAINTIFF'S INJURIES

25.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

26.    On or about May 5, 2024, Plaintiff was riding his Onewheel Pint board in Cherry Hill,    New    Jersey.    Mr.    Schnoll    was    riding    the Onewheel Pint device on the pavement. Upon information and belief, the pavement was smooth and imposed no obstructions or imperfections of any kind. While riding, Mr. Schnoll's Onewheel device suddenly and without warning shut off and "nosedived" while he was riding it on the road, causing the front of the board to violently and unexpectedly slam into the pavement and throwing his body forward off the board and onto the paved roadway.

27.    As a direct result of being unexpectedly thrown off the Onewheel device on the aforesaid date, Mr. Schnoll suffered severe injuries including but not limited to right bankart fracture with anterior inferior labral detachment and periosteal stripping, and abrasion overlying the dorsum of forearm and elbow, which were directly and proximately resulting from his forward ejection from the Onewheel and contact with the ground.

28.    Shortly thereafter, Mr. Schnoll was taken to the Emergency Department at Virtua Voorhees Hospital in Voorhees, New Jersey. Thereafter, Mr. Schnoll underwent X-ray scans and was treated for his right shoulder dislocation.

29.    On or about May 18, 2024, Mr. Schnoll presented to Regional Orthopedic in Cherry Hill, New Jersey. Thereafter, Mr. Schnoll underwent an MRI of his right shoulder, which confirmed a right bankart fracture with anterior inferior labral detachment and periosteal stripping

30.     As a direct result of his injuries, Mr. Schnoll required extensive medical treatment, intensive physical therapy following immobilization, and to date, still has a limited range of motion and experiences chronic and ongoing pain and discomfort.

## CAUSES OF ACTION ASSERTED

31.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if repeated in full here.

32.     Plaintiff brings this action as a personal injury action pursuant to Code of Civil Procedure § 335.1.

## First Cause of Action

(Negligence)

33.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if repeated in full here.

34.     Defendants FM and Does 1 to 100, inclusive, and each of them, owed Plaintiff and the consumer public a duty of due care in designing, manufacturing, marketing, selling, and distributing the Onewheel device used by Plaintiff such that the device could be operated in a normal, safe, and non-dangerous manner.

35.     Defendants breached their duties to Plaintiff by failing to exercise ordinary care and due diligence in negligently designing, manufacturing, marketing, selling, and distributing the Onewheel device used by Plaintiff such that the device could not be operated in a normal, safe, and non-dangerous manner and proximately caused Plaintiff's injuries. Defendants' activities contributed in natural and/or continuous sequence to the Plaintiff's severe injuries, and their actions, as alleged herein, were a substantial contributing factor to Plaintiff's injuries. At all times mentioned herein, Defendants, through their negligence as alleged herein, ignored their responsibilities to Plaintiff and unreasonably jeopardized the health and well-being of Plaintiff and caused their injuries.

36.     Defendants' negligence, as alleged herein, was a substantial factor in causing Plaintiff's injuries, and Plaintiff is entitled to recover compensatory damages in an amount according

8

to proof. Plaintiff has been generally damaged in an amount within the jurisdictional limits of this court.

37.    The Defendants are liable to the Plaintiff for all general, special and punitive damages, as well as delay damages, and other relief to which they are entitled to by law.

## **Second Cause of Action**

### (Strict Liability)

38.    Plaintiff realleges and incorporates by reference all the foregoing allegations as if repeated in full here.

39.    Defendants FM and Does 1 to 100, inclusive, and each of them, is the designer, manufacturer, and/or marketer/seller of the Onewheel device and each is strictly liable to Plaintiff for designing, creating, manufacturing, marketing, labeling, distributing, selling, and placing into the stream of comm The Onewheel device that was designed, manufactured, distributed and/or sold by Defendants was defective in design or construction in that when it left the hands of the Defendants, it was unreasonably dangerous. It was more dangerous than an ordinary consumer would expect and more dangerous than other similar devices.

40.    The Onewheel device that was designed, manufactured, distributed and/or sold by Defendants was defective due to its unreasonably dangerous and unpredictable propensity to shut-off suddenly, nosedive, or tailspin while in operation, without warning, as described above, and because it contained inadequate warnings or instructions because the manufacturer, supplier and/or distributor knew or should have known that the product was intrinsically defective and that users were likely to suffer severe injury and/or death while using the Onewheel.

41.    The Onewheel device that was designed, manufactured, distributed and/or sold by Defendants was defective due to its unreasonably dangerous and unpredictable propensity to shut-off suddenly, nosedive, or tailspin while in operation, without warning, as described above, and because it contained inadequate warnings or instructions because the manufacturer, supplier and/or distributor knew or should have known that the product was intrinsically defective and that users were likely to suffer severe injury and/or death while using the Onewheel.

42.    The Onewheel device that was designed, manufactured, marketed, and/or sold by Defendants was defective due to inadequate testing.

43.    The Onewheel device that was designed, manufactured, marketed, and/or sold by Defendants was defective due to Defendants' failure to provide adequate warnings and instructions after the Defendants knew or should have known of the increased risk of severe injury and/or death from using the Onewheel.

44.    The Onewheel device involved in the subject incident did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way.

45.    The Onewheel device involved in the subject incident was defective in its design because the benefits of the Onewheel's design failed to outweigh the risks of the Onewheel's design in the following manner:

     a.    The gravity of the potential harm resulting from the use, or foreseeable misuse, of the Onewheel was enormous as evidenced by Mr. Schnoll's injuries;

     b.    There existed a high likelihood that severe harm would occur from a sudden and unexpected nosedive of the Onewheel at a speed exceeding 15 mph that would cause its rider to be thrown forward and down to the ground headfirst;

     c.    At the time of the Onewheel's manufacture, there existed numerous and inexpensive alternative safer designs with few or no disadvantages to the existing design.

46.    The Onewheel device involved in the subject incident contained a manufacturing defect in that the subject Onewheel differed from the manufacturer's design or specifications or from other typical units of the same product line when it left the possession of Defendants.

47.    Defendants' designing, manufacturing, marketing, and/or selling the defective Onewheel device as alleged herein and placing it in the stream of commerce, as alleged herein, was a substantial factor in causing Plaintiff's injuries, and he is entitled to recover compensatory

damages in an amount according to proof. Plaintiff has been generally damaged in an amount within the jurisdictional limits of this court.

48.     Defendants are liable to the Plaintiff for all general, special and punitive damages, as well as delay damages, and other relief to which they are entitled to by law.

### Third Cause of Action

(Failure to Warn)

49.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if repeated in full here.

50.     At all times herein mentioned, the subject Onewheel was unsafe for use by consumers, including Mr. Schnoll, and Defendants knew or should have known that said product was unsafe and could cause severe and even fatal injuries during its "normal" operation, as alleged herein; yet Defendants failed to adequately warn users of the risk of serious injury or death.

51.     Mr. Schnoll used the Onewheel device in the manner in which Defendants intended it to be used.

52.     Defendants FM and Does 1 to 100, inclusive, and each of them, promoted and sold the Onewheel device on the open market with the knowledge of the device's unreasonable risk to the public in general and specifically to Plaintiffs.

53.     The Onewheel, as used by Mr. Schnoll, was defective and unreasonably dangerous when sold by Defendants, who are liable for the injuries arising from the Onewheel's design, manufacture, marketing, sale, and use without adequate warning of the device's serious dangers.

54.     The Onewheel, as used by Mr. Schnoll, had potential risks that were known or knowable by Defendants in light of the scientific knowledge that was generally accepted in the scientific community at the time of the Onewheel's manufacture, distribution or sale.

55.     The potential risks of the Onewheel, including but not limited to its propensity to nosedive suddenly and without warning under various conditions presented a substantial danger when the Onewheel was used or misused in an intended or reasonably foreseeable way.

11

56.     Ordinary consumers would not have recognized the potential risks of the Onewheel, including but not limited to its propensity to nosedive suddenly and without warning under various conditions.

57.     Defendants failed to adequately warn or instruct of the above-described potential risks of the Onewheel, including but not limited to its propensity to nosedive suddenly and without warning under various conditions.

58.     Defendants further breached their duty to provide timely and adequate warnings, instructions, and information, at least in the following particulars:

    (a) failing to ensure Onewheel warnings were accurate, conspicuous and adequate despite having extensive knowledge of the risks associated with Onewheel use;

    (b) failing to conduct adequate pre- and post-market safety surveillance and testing such that adequate warning could have been issued to users;

    (c) failing to include adequate conspicuous warnings that would alert users to the dangerous risks of the Onewheel, including but not limited to, among other things, sudden and unexpected nose dive; and

    (d) representing that Onewheel was safe for use, when in fact, Defendants knew or should have known that Onewheel was unsafe for this use and that it was actually unreasonably dangerous to use when operated as intended by Defendants.

59.     Defendants continued to aggressively manufacture, market, promote, distribute, and sell the Onewheel, even after they knew or should have known of the unreasonable risks of serious injury or death caused by use of the Onewheel. The lack of sufficient instructions and/or warnings was a substantial factor in causing Plaintiff's harm in that Defendants' designing, manufacturing, marketing, and/or selling the Onewheel device and placing it in the stream of commerce without adequate warnings of the risk of serious injury or death, as alleged herein, caused Mr. Schnoll's severe injuries; and Plaintiff is entitled to recover compensatory damages in an amount according to proof. Plaintiff has been generally damaged in an amount within the jurisdictional limits of this court.

60.     For the reasons described hereinabove, Defendants are liable to the Plaintiff for all general, special and punitive damages, as well as delay damages, and other relief to which Plaintiff is entitled to by law.

**<u>Fourth Cause of Action</u>**

(Negligent Design)

61.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if repeated in full here.

62.     Defendants FM and Does 1 to 100, inclusive, and each of them, was the designer, manufacturer, seller, distributor, marketer and/or seller of Onewheel, which was negligently designed.

63.     Defendants were negligent in developing, designing, processing, manufacturing, inspecting, testing, packaging, selling, distributing, supplying, marketing, and promoting Onewheel, which was defective and presented an unreasonable risk of harm to consumers. Onewheel was negligently designed in ways that include, but are not limited to, one or more of the following:

      a.     When placed in the stream of commerce, Onewheel suffered from unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users, including Mr. Schnoll, to unreasonable risks of serious injury or death.

      b.     Onewheel was insufficiently tested.

      c.     Onewheel causes serious injury and/or death that outweighs any potential utility.

      d.     Onewheel was not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the users, including Mr. Schnoll, of the potential risks of serious injury and/or death associated with its use.

      e.     In light of the potential and actual risk of harm associated with Onewheel's use, a reasonable person who had actual knowledge of this potential and actual risk of harm

and/or death would have concluded that Onewheel should not have been marketed in that condition.

f.    Defendants were under a duty of due care to act for the protection of consumers, such as Plaintiff. The Defendants owed a duty to consumers to exercise reasonable care in developing, designing, processing, manufacturing, inspecting, testing, packaging, selling distributing, supplying, marketing, and promoting Onewheel, and Defendants breached that duty by the conduct as alleged herein.

g.    Defendants knew or should have known that use of Onewheel as intended imposed unreasonable risks to the health and safety of consumers. Defendants knew of the grave risks caused by their product from investigation and testing performed by themselves or others or, to the extent Defendants did not fully know of those risks, it was because Defendants unreasonably failed to perform appropriate, adequate and proper investigations and tests that would have disclosed those risks.

h.    Defendants' conduct described above was grossly negligent in that their actions and omissions involved willful and reckless conduct and were carried out with conscious disregard for the unreasonable risk of Onewheel and its potential harm to consumers.

64.    Defendants' negligent designing, manufacturing, marketing, and/or selling the Onewheel device and placing it in the stream of commerce without adequate warnings of the risk of serious injury or death, as alleged herein, were substantial factors in bringing about harm to Plaintiff herein in that Mr. Schnoll sustained severe injuries when his Onewheel suddenly and unexpectedly nosedived; and Plaintiff is entitled to recover compensatory damages in an amount according to proof. Plaintiff has been generally damaged in an amount within the jurisdictional limits of this court.

65.    Defendants are liable to the Plaintiff for all general, special and punitive damages, as well as delay damages, and other relief to which Plaintiff is entitled to by law.

### Fifth Cause of Action

(Negligent Recall/Retrofit)

14

66.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if repeated in full here.

67.     Defendants FM and Does 1 to 100, inclusive, and each of them, was the designer, manufacturer, seller, distributor, marketer and/or seller of Onewheel, which was negligently designed.

68.     Defendants knew, or reasonably should have known, that the Onewheel was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

69.     Defendants became aware of this defect before or after the Onewheel was sold.

70.     After Defendants learned that the Onewheel was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner, Defendants failed to recall or retrofit or warn of the danger of the Onewheel.

71.     Plaintiff contends and hereupon alleged that a reasonable manufacturer, distributor or seller under the same or similar circumstances would have recalled or retrofitted or provided adequate warnings about the Onewheel.

72.     Defendants' failure to recall, to retrofit or to provide adequate warnings about the Onewheel's dangerous propensities under foreseeable use were substantial factors in causing Plaintiff's injuries.


### Sixth Cause of Action

(Violations of California Business & Professions Code § 17200)

73.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if repeated in full here.

74.     Plaintiff is informed and believes and thereon alleges that Defendants, by the acts and misconduct alleged herein, violated Business & Professions Code § 17200.

75.     On behalf of the general public, Plaintiff hereby seeks injunctive, restitutionary and other equitable relief as appropriate against Defendants for their violations of § 17200.

76.     California Business & Professions Code § 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

77.     The acts and practices described in the preceding paragraphs were and are likely to mislead the general public and, therefore, constitute unfair business practices within the meaning of Business & Professions Code § 17200. The acts of untrue and misleading advertising set forth in the preceding paragraphs are incorporated by reference and are, by definition, violations of Business & Professions Code § 17200. This conduct includes, but is not limited to:

      a.     Representing to Plaintiff and the general public that Onewheel was safe for ordinary use, knowing that these representations were false, and concealing from Plaintiff and the general public that Onewheel had a serious propensity to cause serious or even fatal injuries during normal operation;

      b.     Engaging in advertising programs designed to create the image, impression and belief by consumers, including Plaintiff, that Onewheel was safe for ordinary, recreational use, even though Defendants knew that to be false, and even though Defendants had no reasonable grounds to believe that to be true; and

      c.     Purposely downplaying and understating the safety hazards and risks associated with Onewheel use.

78.     These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California Business & Professions Code § 17200, as well as unfair, deceptive, untrue and misleading advertising as prohibited by California Business & Professions Code § 17500.

79.     The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

80.     As a result of the conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of millions of

16

1    dollars in ill-gotten gains from the sale of Onewheel in California and throughout the United States,

2    sold in large part as a result of the acts and omissions described herein.

3           81.    Because of the fraudulent misrepresentations made by Defendants, as detailed

4    above, and the inherently unfair practice of committing a fraud against the public by intentionally

5    misrepresenting and concealing material information, the acts of Defendants described herein

6    constitute unfair or fraudulent business practices.

7           82.    Plaintiff, pursuant to California Business & Professions Code § 17203, seeks an

8    order of this court compelling Defendants to provide restitution and to disgorge all monies

9    collected and profits realized by Defendants as a result of their unfair business practices, and

10   injunctive relief calling for Defendants to cease such unfair business practices in the future.

11

12                                **Seventh Cause of Action**

13                        (Violation of the Consumer Legal Remedies Act –

14                        California Civil Code § 1750, *et seq.*)

15          83.    Plaintiff realleges and incorporates by reference all the foregoing allegations as if

16   repeated in full here.

17          84.    Plaintiff is informed and believes and thereon alleges that Defendants FM and

18   Does 1 to 100, inclusive, and each of them, by the acts and misconduct alleged, violated the

19   Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

20          85.    Plaintiff hereby seeks injunctive relief as appropriate against Defendants for their

21    violations of Civil Code § 1750, *et seq.*

22          86.    The CLRA applies to Defendants' actions and conduct described herein because it

23   extends the transactions which are intended to result, of which have resulted, in the sale of goods

24   to consumers.

25          87.    Plaintiff is a "consumer" within the meaning of California Civil Code §1761(d).

26          88.    Defendants have violated and continue to violate the CLRA in representing that

27   goods have characteristics and benefits which they do not have, in violation of Civil Code §

28   1770(a)(5).

                                         17

89.     At all times relevant, Defendants committed acts of disseminating untrue and misleading statements, as defined by Civil Code § 1770, by engaging in the following acts and practices with intent to induce members of the public to purchase and use Onewheel:

      a.     Representing to Plaintiff and the general public that Onewheel was safe for ordinary use, knowing that these representations were false, and concealing from Plaintiff and the general public that Onewheel had a serious propensity to cause serious or even fatal injuries during normal operation;

      b.     Engaging in advertising programs designed to create the image, impression and belief by consumers, including Plaintiff, that Onewheel was safe for ordinary, recreational use, even though Defendants knew that to be false, and even though Defendants had no reasonable grounds to believe that to be true; and

      c.     Purposely downplaying and understating the safety hazards and risks associated with Onewheel use.

90.     The foregoing practices constitute false and misleading advertising and representations within the meaning of Civil Code § 1770.

91.     The acts of untrue and misleading statements by Defendants described hereinabove present a continuing threat to members of the public and individual consumers in that the acts alleged herein are continuous and ongoing, and the public and individual consumers will continue to suffer harm.

92.     Unless Defendants are enjoined from continuing to engage in these violations of the CLRA, Plaintiffs and consumers will continue to be harmed by the wrongful actions and conduct of Defendants.

93.     Pursuant to Civil Code § 1780, Plaintiff seeks an order of this court for injunctive relief calling for Defendants to cease such deceptive business practices in the future.

**PUNITIVE DAMAGES ALLEGATION**

94.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if repeated in full here.

95.    Plaintiff is entitled to punitive damages because Defendants FM and Does 1 to 100, inclusive, and each of them, failed to warn and other actions as described herein were malicious, wanton, willful or oppressive or were done with reckless indifference to the Plaintiff's and the public's safety and welfare. Defendants misled Onewheel users and purchasers, as well as the public at large, including Plaintiff herein, by making false representations about the safety and risks associated with their product. Defendants downplayed, understated and/or disregarded their knowledge of the serious and potentially deadly risks associated with the foreseeable use of their product.

96.    Defendants were, or should have been, in possession of evidence demonstrating the serious risk of injury or death associated with Onewheel. Nonetheless, Defendants continued to market the product by providing false and misleading information, or by omitting to disclose vital information, including but not limited to, the Onewheel's propensity to suddenly and unexpectedly nosedive without prior warning under various conditions.

97.    At the time the Onewheel involved in the subject incident was designed, manufactured, or sold to Plaintiff, Onewheel was aware of safer practical and inexpensive alternate designs for the Onewheel that could have either prevented the above-described nosedive under certain conditions or in the event of a nosedive, could have mitigated the risk of rider ejection from the Onewheel.

98.    Despite this knowledge, Defendants consciously and purposefully decided against the above-described measures and chose to gamble with the safety of the public.

99.    In addition, once Defendants became aware of the inherent dangers of the Onewheel and learned of safer practical and inexpensive alternate designs for the Onewheel, Defendants failed to recall and to retrofit the Onewheel with these safer alternate designs or to adequately warn the public about the Onewheel's propensity to suddenly and unexpectedly nosedive without prior warning under various conditions.

100.    Defendants' actions described above were performed willfully, intentionally and with a conscious disregard for the rights of Plaintiff and the public.

1    101.    Accordingly, Plaintiff seeks and is entitled to punitive damages in an amount to be

2  determined at trial.

3

4                                    **<u>PRAYER</u>**

5        **WHEREFORE**, Plaintiff prays for judgment against Defendants FUTURE MOTION,

6  INC. and Does 1 to 100, and as appropriate to each cause of action alleged and as appropriate to

7  the particular standing of Plaintiff as follows:

8        1.    Past and future general damages, the exact amount of which has yet to be

9              ascertained, in an amount which will conform to proof at time of trial;

10       2.    Past and future economic and special damages according to proof at the time of trial;

11       3.    Loss of earnings and impaired earning capacity according to proof at the time of

12             trial;

13       4.    Medical expenses, past and future, according to proof at the time of trial;

14       5.    For past and future mental and emotional distress, according to proof;

15       6.    Punitive or exemplary damages according to proof at the time of trial;

16       7.    Restitution, disgorgement of profits, and other equitable relief;

17       8.    Injunctive relief;

18       9.    Attorney's fees;

19       10.   For costs of suit incurred herein;

20       11.   For pre-judgment interest as provided by law; and

21       12.   For such other and further relief as the Court may deem just and proper.

22

23

24

25

26

27

28

1

## <u>JURY DEMAND</u>

2

Plaintiff(s) hereby demands a trial by jury as to all claims in this action.

3

4

5

6

7

*/s/ Tracy A. Finken*

Tracy A. Finken, Esquire

8

**ANAPOL WEISS**

One Logan Square

9

130 N. 18th Street, Suite 1600

10

Philadelphia, PA 19103

(215) 735-1130

11

(215) 875-7731

12

tfinken@anapolweiss.com

*Attorney for Plaintiff*

13

14

<u>October 3, 2025</u>

15

16

17

18

19

20

21

22

23

24

25

26

27

28